UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                       :

MONICA ALVAREZ ALFARO and, JOSE     :
MARIA ISABEL ALFARO SALINA,       :
                                         :

               Plaintiffs,     :
                                         :

          -against-      :
                                         :

SABA LIVE POULTRY CORP. I,       :
                                         :

             Defendant.     :
                                         :
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION
ON DAMAGES INQUEST**

**23-CV-1102 (RA) (KHP)**

**TO: THE HONORABLE RONNIE ABRAMS, UNITED STATES DISTRICT JUDGE**
**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs are former employees of Defendant Saba Live Poultry Corp. I ("Saba"), a business that sells, slaughters, cleans and cuts poultry and other animals.   They filed this action on February 9, 2023, asserting claims under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 203(d) *et seq.,* and New York Labor Law ("NYLL"), § 190 *et. seq.*, and claiming that Saba failed to pay them the appropriate minimum and overtime wages and failed to provide state-mandated wage notices and pay statements.   They seek recovery of wages due, statutory damages, liquidated damages, pre-judgment interest and attorneys' fees and costs.

After entry of default against the Defendants, the Honorable Ronnie Abrams referred this action to me for a report and recommendation on damages.   Defendant did not file an opposition to the Plaintiffs' Motion for a Default Judgment, nor did they appear at any point in the damages inquest proceedings.   After review of the submissions, I respectfully recommend that Plaintiffs be awarded damages as set forth in detail below.

1

**FACTUAL BACKGROUND**

Plaintiffs Monica Alvarez Alfaro ("Alvarez") and Maria Isabel Alfaro Salina ("Alfaro") worked for Saba in the Bronx, New York as laborers in a poultry hatchery, cleaned and chopped chickens, and packaged chickens, as well as served chickens to Saba's customers. (ECF Nos. 26-1 ¶ 9; 26-2 ¶ 9.) Saba is alleged to have an annual gross volume of sales in excess of $500,000 and engage in interstate commerce.  (ECF No. 1 ¶ 5.)  Saba has more than 11 employees.  (ECF No. 26-1 ¶ 13.)

Both Alvarez and Alfaro attest they worked 60 hours per week on average and were paid $110 per day.[1]  (ECF No. 1 ¶¶ 15, 39; 26-1 ¶ 9; 26-2 ¶ 9.) Both attest they did not receive overtime for hours worked in excess of forty in any work week.  (26-1 ¶ 9; 26-2 ¶ 9.)  Both attest they did not receive breaks or personal time off.  (26-1 ¶ 9; 26-2 ¶ 9.)  Both attest they worked ten-hour shifts from Monday through Saturdays from 8:00 a.m. to 6:00 p.m. (ECF Nos. 26-1 ¶ 11; 26-2 ¶ 11.)  Alfaro was employed from 2016 through September 1, 2022.  (ECF No. 1 ¶ 35; 26-2 ¶¶ 11, 17.)  Alvarez was employed from in or about 2016 through May 20, 2022.  (ECF No. 1 ¶ 10; 26-1 ¶¶ 11, 17.)  Both attest they were paid in cash and that Saba did not keep time records.  (ECF Nos. 26-1 ¶¶ 9, 12; 26-2 ¶¶ 9, 12.) Both attest they did not receive any pay stubs or wage notices.  (ECF Nos. 26-1 ¶ 6; 26-2 ¶ 6.)  The allegations in the complaint, together with the evidentiary proof are sufficient to state claims for failure to pay minimum wage and overtime and sufficient to compute damages.

---

[1] The number of hours worked as alleged in the complaint differs from the hours worked attested in Plaintiffs' affidavits.  For purposes of calculating damages, the Court uses the number of hours worked attested in the affidavits, rather than that alleged in the complaint.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 55 governs judgments against a party that has failed to plead or otherwise defend itself in an action. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981) (defendant's ongoing failure to appear supported failure to plead for the purpose of entry of default). Rule 55 requires a two-step process for an entry of a default judgement. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). First, upon notification from the moving party, the court clerk enters a default of the party who failed to defend. *Priestley v. Headminder, Inc*., 647 F.3d 497, 504-05 (2d Cir. 2011) (citing Fed. R. Civ. P. 55(a)). Second, once the clerk issues a certificate of default, the moving party may apply for entry of default judgment pursuant to Rule 55(b). *Id*. A default constitutes an admission of all well-pleaded factual allegations in the complaint, and the allegations as they pertain to liability are deemed true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). However, plaintiffs are not entitled to a default judgment as a matter of right merely because the opposing party is in default. *Finkel v. Universal Elec. Corp*., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Plaintiffs bear the burden to demonstrate that their uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *La Barbera v. Fed. Metal & Glass Corp*., 666 F. Supp. 2d 341, 348-49 (E.D.N.Y. 2009).

To determine whether a motion for default judgment is warranted, courts within this district consider three factors: (1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.

*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court's grant of a default judgment).

Here, Plaintiffs have satisfied the two-step procedural requirements of Rule 55 by submitting a request for both entry of default and default judgment following the issuance of the clerk's certification. (ECF Nos. 18-21, 28-30.) And, Judge Abrams granted the motion for default. (ECF No. 22)

Generally, a defendant's default is an admission of the plaintiff's well-pleaded allegations as to liability but not for purposes of determining damages. *See Greyhound Exhibitgroup Inc.*, 973 F.2d at 158. So, even when a defendant has defaulted, a substantive analysis of the alleged claims is required to determine whether the plaintiff may be awarded damages, and proof of damages is required. *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). In this case, Plaintiffs submitted declarations concerning their dates of employment, hours worked, pay, method of pay and absence of paychecks or wage notices, and Plaintiffs' counsel submitted contemporaneous time records reflecting time spent on this matter to demonstrate damages.

Although a court may hold a hearing to assess damages, a hearing is not required when a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2). Holding an inquest by affidavit, without an in-person court hearing, is permissible "as long as [the court] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (citation omitted). In this case, Plaintiffs have offered sufficient evidentiary support through declarations and exhibits submitted in support of their claim for damages. They also filed an affidavit of service of the papers on Defendants (ECF Nos. 20, 25, 27, 30), but

Defendant has not submitted any response or otherwise appeared in this action. Hence, no evidentiary hearing is required. Accordingly, I discuss damages below.

**1. Unpaid Wages and Liquidated Damages**

Section 206 of the FLSA sets forth the minimum hourly wage that employers must pay their employees. 29 U.S.C. § 206(a)(1)(C). Section 207 specifies that an employer must pay employees who work more than forty hours during a workweek for the excess hours "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). There is a presumption that an employee is entitled to overtime; an employer bears the burden of proving that an employee is exempt from overtime. *Id.*; *Bilyou v. Dutchess Beer Distributors, Inc.,* 300 F.3d 217, 222 (2d Cir. 2002) (recognizing that exempt status under the FLSA is an affirmative defense). Employers who violate the FLSA's minimum wage and overtime provisions are liable for the amount of unpaid wages and an additional equal amount as liquidated damages. 29 USC § 216(b).

New York's Labor law is the state analogue to the federal FLSA. Although the Labor Law "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales," it otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime and requires an overtime rate of 1.5 x the regular hourly rate. *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. CV 14-1695 ARR MDG, 2015 WL 1529653, at *4 (E.D.N.Y. Mar. 31, 2015*)*; *See* 29 U.S.C. § 207(a)(1); 12 N.Y. Comp. Codes R. & Regs. § 142–2.2; *Shanfa Li v. Chinatown Take-Out Inc.,* 812 Fed.Appx. 49, 52 (2d Cir. 2020) (overtime calculation under the FLSA and NYLL).

Under applicable law, Plaintiffs are entitled to the more generous minimum wage and overtime rates during all relevant periods.[2] *See, e.g., Elisama v. Ghzali Gourmet Deli Inc.*, No. 14-cv-8333 (PGG) (DF), 2016 WL 11523365, at *11 (S.D.N.Y. Nov. 7, 2016) (applying NYLL's six-year statute of limitations because it provided the greatest measure of relief*), report and recommendation adopted*, 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498, 515-16 (S.D.N.Y. 2017) (same), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).  New York's minimum wage was at all relevant times higher than the federal minimum wage.[3]  *See* 29 U.S.C. §§206(a)(1), 207(a)(1), N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1; *see also* N.Y. Dept. of Lab., New York's Minimum Wage Overview, https://dol.ny.gov/minimum-wage-0 (last visited May 2, 2024).  New York has a six-year statute of limitations period for wage claims, which is longer than the limitations period under the FLSA. *See Byer v. Periodontal health Specialists of Rochester, PLLC,* 2021 WL 3276725, at *2 (2d Cir. 2021) (citing N.Y. Lab. Law § 663).  Therefore, Plaintiffs are entitled to a computation of their wages due according to New York law.

When, as here, an employee is only "paid a flat sum for a day's work . . ., without regard to the number of hours worked in the day[,] . . . his regular rate [under the FLSA] is determined by totaling all the sums received at such day rates . . . in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112. To calculate the regular rate for the NYLL, courts

---

[2] Plaintiffs state in their inquest papers that they are only seeking damages under the state law as a result.
[3] The federal minimum wage during Plaintiffs' employment was $7.25. 29 U.S.C. § 206(a)(1). The federal overtime rate is 1.5 x the employee's regular hourly rate.  29 U.S.C. § 207(a)(1).  In New York City, the minimum wage applicable to non-fast food employees of employers with more than 11 employees was $11 an hour from December 31, 2016 through December 30, 2017; $13.00 per hour from December 31, 2017 to December 30, 2018; $15 per hour from December 31, 2018 to December 31, 2023.  It was raised to $16 per hour as of January 1, 2024. N.Y. Lab. Law § 652 (McKinney). The New York State overtime rate also is 1.5 times the regular rate. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1.

must look to "regulations promulgated by New York Department of Labor ('NYDOL')" because the NYLL does not have specific "provisions governing overtime compensation." *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 252 (S.D.N.Y. 2013) (quotations omitted). Similarly, under New York law, when an employee's job falls under the so-called "miscellaneous industries and occupations" rules, and the employee "is paid on a piece work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." *Id.*; *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16. Thus, in this case, where Plaintiffs were paid a flat rate each day, a court calculates the regular rate the same way under the NYLL as it would under the FLSA—by dividing the total weekly earnings by the total hours worked. *See, e.g.*, *Chen v. JP Standard Constr. Corp.*, No. 14 Civ. 1086 (MKB), 2016 WL 2909966, at *10 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016); *Yin v. Kim*, No. 07 Civ. 1236 (DLI) (JO), 2008 WL 906736, at *6 (E.D.N.Y. Apr. 1, 2008) (same).

The regular rate is then used to determine overtime owed, unless the regular rate falls below the minimum wage. When that happens, "the regular rate for purposes of calculating overtime is the relevant minimum wage." *Martinez v. Dannys Athens Diner Inc.*, No. 16 Civ. 7468 (RJS), 2017 WL 6335908, at *4 (S.D.N.Y. Dec. 5, 2017); *see also Peralta v. M&O Iron Works, Inc.*, No. 12 Civ. 3179 (ARR), 2014 WL 988835, at *7 (E.D.N.Y. March 12, 2014) (same). Here, Plaintiffs were paid $660 per week for 60 hours of work, resulting in a regular rate of $11 per hour.

Plaintiffs concede they are not owed minimum wage when New York law's minimum wage rate was $11/hour.  Thus, Plaintiffs are owed additional minimum wage only for the period when their wages fell below New York's minimum wage—that is, from December 31, 2017 to the end

of their employment, because that is when New York's minimum wage was greater than $11 per

hour.  I calculate the minimum wages due as follows:

The total unpaid minimum wages due to Alvarez are $32,320, calculated as follows:

| Pay Period (number of weeks) | Regular Hours Worked per Week | Applicable Minimum Wage | Weekly Pay ($110/day x 6 days per week) | Regular Hourly Rate | Weekly Minimum Wage Underpayment Amount | Total Underpay (weekly underpay multiplied by the number of weeks) |
|---|---|---|---|---|---|---|
| 12/31/2017-12/30/2018 (52 weeks) | 40 | $13 | $11/hr ($660.00/wk) | $11 | $80.00 | $4,160.00 |
| 12/31/2018-5/15/2022[4] (176 weeks) | 40 | $15.00 | $11/hr ($660.00/wk) | $11 | $160.00 | $28,160.00 |

The total unpaid minimum wages due to Alfaro are $34,720, calculated as follows:

| Pay Period (number of weeks) | Regular Hours Worked per Week | Applicable Minimum Wage | Weekly Pay ($110/day x 6 days per week) | Regular Rate | Weekly Minimum Wage Underpayment Amount | Total Underpay (weekly underpay multiplied by the number of weeks) |
|---|---|---|---|---|---|---|
| 12/31/2017-12/30/2018 (52 weeks) | 40 | $13 | $11/hr ($660.00/wk) | $11/hr | $80.00 | $4,160.00 |
| 12/31/2018-9/1/2022 (191 weeks) | 40 | $15.00 | $11/hr ($660.00/wk) | $11/hr | $160.00 | $30,560.00 |

[4] At the Inquest Hearing on May 2, 2024, counsel for Plaintiffs indicated that he used May 15, 2022 as the end date of Plaintiff Alvarez's employment to calculate damages since Plaintiff is unsure of the exact date in May 2022 that she ceased working. The Court accepts May 15, 2022 as the midpoint for the month and consistent with counsel's explanation, uses that date to calculate damages. The Court notes Plaintiff Alvarez makes reference to the date May 20, 2022 in her affidavit, but that appears to be an explanation of a calculation, rather than the final day of her employment. (ECF Nos. 26-1 ¶17.)

The overtime rates for both Plaintiffs are as follows:

February 9, 2017 through December 30, 2017:        $16.50/hour
December 31, 2017 through December 30, 2018:       $19.50/hour
December 31, 2018 through last date of employment: $22.50/hour

Plaintiffs each worked 60 hours per week on average but were paid their straight time rate,

rather than their overtime rate, for 20 hours of overtime each week.  Accordingly, I calculate the

overtime due as follows:

The total unpaid overtime wages due to Alvarez are $54,380.00, calculated as follows:

| Pay Period (number of weeks) | Overtime Hours Worked per Week | Applicable Overtime Rate | Overtime Differential (OT Rate minus Straight Time Rate Paid) | Weekly Overtime Due (20 x OT rate) | Total Underpayment (weekly underpay multiplied by the number of weeks) |
|---|---|---|---|---|---|
| 2/9/2017-12/30/2017 (46 weeks) | 20 | $16.50 | $5.50 | $110.00 | $5,060.00 |
| 12/31/2017-12/30/2018 (52 weeks) | 20 | $19.50 | $8.50 | $170.00 | $8,840.00 |
| 12/31/2018-5/15/2022 (176 weeks) | 20 | $22.50 | $11.50 | $230.00 | $40,480.00 |

The total unpaid overtime wages due to Alfaro are $57,830, calculated as follows:

| Pay Period (number of weeks) | Overtime Hours Worked per Week | Applicable Overtime Rate | Overtime Differential (OT Rate minus Straight Time Rate Paid) | Weekly Overtime Due (20 x OT rate) | Total Underpayment (weekly underpay multiplied by the number of weeks) |
|---|---|---|---|---|---|
| 2/9/2017-12/30/2017 (46 weeks) | 20 | $16.50 | $5.50 | $110.00 | $5,060.00 |
| 12/31/2017-12/30/2018 (52 weeks) | 20 | $19.50 | $8.50 | $170.00 | $8,840.00 |
| 12/31/2018-9/1/2022 (191 weeks) | 20 | $22.50 | $11.50 | $230.00 | $43,930.00 |

Based on the above calculations, Alvarez is due a total of $86,700 in unpaid minimum and overtime wages, and Alfaro is due a total of $92,550 in unpaid minimum and overtime wages.

2. **Liquidated Damages**

New York Labor Law expressly provides that employees are entitled to recover all unpaid wages and liquidated damages at a rate of 100 percent of the wages due. *See* N.Y. Lab. Law § 198(1-a); *Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014).* Plaintiffs seek liquidated damages under the New York Labor Law.   Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith." *Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012); see N.Y. Lab. Law § 663(1).  As Defendant has defaulted, it has not established the good faith necessary to rebut the liquidated damages presumption.  By virtue of Defendant's default, their failure to pay appropriate wages

can be deemed willful, entitling Plaintiffs to liquidated damages.  *Galeana*, 120 F. Supp. 3d at

317 ("[D]efendants' default precludes a showing of good faith or reasonable belief that they

acted in accordance with the law.")   Accordingly, Alvarez is due liquidated damages in the

amount of $86,700 and Alfaro is due liquidated damages in the amount of $92,550.

### 3. **Statutory Damages**

Plaintiffs also seek statutory damages for Defendants' failure to provide wage notices

and wage statements in compliance with New York's Wage Theft Prevention Act ("WTPA"), NYLL

§ 195(1) and (3).  NYLL § 198 sets the amount of statutory damages an employee may recovery

for violations of NYLL § 195.

Regarding wage notices, employers are required to provide written wage notices "at the

time of hiring" and/or within ten days of an employee's hire date.  2014 N.Y. Laws ch. 537 § 1,

amending N.Y. Lab. Law § 195(1-a).  Failure to follow this can result in a $50 per day payment to

the employee with a maximum recovery of $5,000.00 per employee. NYLL § 198(1-b).

Regarding wage statements, the WTPA allows employees to recover statutory damages

of $250 dollars "for each work day that the violations occurred or continue to occur," not to

exceed $5,000. 2014 N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198(1-d); *see also Zhang

v. Red Mtn. Noodle House Inc*., No. 15 CV 628, 2016 WL 4124304, at *6 (E.D.N.Y. July 5, 2016),

*report and recommendation adopted*, 2016 WL 4099090 (E.D.N.Y. Aug. 2, 2016).

Both Plaintiffs attest that they never received a written wage notice at the time of hiring

or anytime thereafter.  Plaintiffs further assert that they never received wage statements with

their pay; rather, they received only cash.  However, Plaintiffs cannot recover damages for these

violations because their complaint contains no allegations of harm that resulted from Plaintiffs'

failure to receive wage notices or statements.  The Supreme Court clarified the requirement for

Article III standing in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), holding that "[o]nly those

plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that

private defendant over that violation in federal court." *Id.* at 427.  Pursuant to *TransUnion*,

Plaintiffs lack standing in federal court to claim violations of NYLL where they "cannot

demonstrate a tangible injury as a result of the defendant's violation of [NYLL wage notice and

wage statement provisions]." *Huerta v. 101 N. Laundromat Inc.*, No. 21CV6127ARRCLP, 2023 WL

199699, at *2 (E.D.N.Y. Jan. 17, 2023); *see also Zavala v. Top Shelf Elec. Corp.*, No.

20CIV9437JGLCGWG, 2024 WL 1543605 (S.D.N.Y. Apr. 10, 2024).  Because Plaintiffs only allege

that Defendants violated the law and did not allege separate harm for purposes of Article III

standing, Plaintiffs are not entitled to statutory damages.

4. **Pre-Judgment Interest**

Plaintiffs also request and are entitled to prejudgment interest under the NYLL.  *See* N.Y.

Lab. Law § 663; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015)

("In contrast to the FLSA, the NYLL permits an award of both liquidated damages and

prejudgment interest."). "Prejudgment interest is calculated on the unpaid wages due under the

NYLL, not on the liquidated damages awarded under the state law." *Fermin*, 93 F. Supp. 3d at 49

(quoting *Mejia v. East Manor USA Inc.*, No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y.

Apr. 19, 2013) (internal brackets removed), *report and recommendation adopted*, 2013 WL

2152176 (E.D.N.Y. May 17, 2013)).

The statutory rate of interest is nine percent per annum. N.Y. C.P.L.R. § 5004.  Where

damages were incurred at various times, interest may be calculated from a single reasonable

intermediate date. *Id*. § 5001(b).  The midpoint of the plaintiff's employment during the statutory damages period is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 49.

Neither Plaintiff provides her exact start date; rather, both state they began employment in 2016.  Insofar as both were employed for longer than the statute of limitations period, I utilize the last date of the statute of limitations period (i.e., February 9, 2017) as a start date for computing the midpoint of their damages period.  I calculate the midpoint of Alvarez's damages period to be September 27, 2019 and the midpoint of Alfaro's damages period to be November 21, 2019.  Accordingly, I recommend that should this Report and Recommendation be adopted, the Clerk of Court compute pre-judgment interest from the midpoint date for each Plaintiff to the date this Report and Recommendation is adopted as follows:

|  | Dates Employed during statute of limitation period | Midpoint Date | Unpaid Wages Damages | Calculate 9% per annum | Per Diem Rate |
|---|---|---|---|---|---|
| Alvarez | February 9, 2017 – May 15, 2022 | September 27, 2019 | $86,700 | .09/365 | $21.37 |
| Alfaro | February 9, 2017 – Sept. 1, 2022 | November 21, 2019 | $92,550 | .09/365 | $22.82 |

5. <u>**Attorneys' Fees**</u>

The FLSA and NYLL both provide for an award of reasonable attorneys' fees to successful plaintiffs. *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663(1).  Plaintiffs are represented by Justicia Laboral, LLC.  Attorney Daniel I. Schlade performed all the legal work on this matter.  Mr. Schlade has been practicing law for over 20 years and has litigated labor and employment cases throughout his career.  (ECF No. 32.)  Six years ago, Mr. Schlade's practice shifted to exclusively focus on labor litigation. *Id.*  Although Mr. Schlade was assisted by a paralegal, Plaintiffs seek payment only for Mr. Schlade's work on this matter for a total of $8,360.00.  Mr. Schlade's rate is $400 per hour and he spent 20.9 hours on this matter.

Attorneys' fee awards are typically determined using the lodestar approach, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro–North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).  "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008).  In assessing whether an attorney's hourly rate is reasonable, courts may rely on their own knowledge of a firm's hourly rates. *See Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012) (citing *Miele v. New York State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987)).  "Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases."

14

*Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14CV10234JGKJLC, 2016 WL 4704917, at *20

(S.D.N.Y. Sept. 8, 2016) (finding a range of $250 to $450 per hour reasonable; collecting cases),

*report and recommendation adopted sub nom. Xochimitl v. Pita Grill of Hell's Kitchen, Inc*, No. 14

CIV. 10234 (JGK), 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016); *see also  Lopez v. Emerald Staffing,*

*Inc*., No. 18 CIV. 2788 (SLC), 2020 WL 915821, at *13 (S.D.N.Y. Feb. 26, 2020) ("In this district,

courts generally award experienced wage-and-hour attorneys between $300 to $400 per

hour").

      In assessing whether the number of hours billed by the attorney is reasonable, courts

consider "whether, at the time the work was performed, a reasonable attorney would have

engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation

omitted).  Plaintiff bears the burden to produce "contemporaneous time records indicating, for

each attorney, the date, the hours expended, and the nature of the work done."  *Marion S.*

*Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014); s*ee also Fisher v. SD Prot. Inc.*, 948 F.3d

593, 600 (2d Cir. 2020).

      District courts exercise "considerable discretion" in awarding attorneys' fees. *See D.B. ex*

*rel. S.B. v. New York City Dep't of Educ.*, 18-CV-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y.

Apr. 22, 2019) (internal quotation marks and citation omitted), *report and recommendation*

*adopted by* 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019); *see also Hensley v. Eckerhart*, 461 U.S.

424, 437 (1983); *Arbor Hill*, 522 F.3d at 190.  However, when awarding attorneys' fees, the court

must also "clearly and concisely state reasons supporting the award."  *Tackie v. Keff Enters. LLC*,

No. 14–CV–2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (first citing *Hensley*,

461 U.S. at 437; then citing *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014))

(awarding attorneys' fees under FLSA and NYLL).

Having reviewed the affidavit of Schlade and his billing entries, both the hourly rate and

time spent is reasonable.  Therefore, I recommend awarding Plaintiffs attorneys' fees of

$8,360.00.

**6.  Costs**

Both the FLSA and NYLL entitle prevailing plaintiffs in wage-and-hour actions to recover

costs.  29 U.S.C. §216(b); NYLL §663(1).  "An award of costs 'normally include[s] those

reasonable out-of-pocket expenses incurred by the attorney and which are normally charged

fee-paying clients.'"  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Reichman*

*Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see also Perez Garcia v.*

*Hirakegoma Inc.*, No. 17 CIV. 7608 (SLC), 2020 WL 1130765 at *13 (S.D.N.Y. Mar. 9, 2020).

Here, Plaintiffs seek to recover the filing fee of $402 and process server fees of $112.

These expenses are typically reimbursed under the FLSA's and NYLL's costs provisions.  *See*

*Xochimitl*, 2016 WL 4704917 at *22 (awarding costs for filing and process server costs).  The

Court may take judicial notice of the filing fee.  As for process server fees, Plaintiff's counsel

provided a service of process invoice for $112.  Accordingly, I recommend awarding Plaintiffs

costs in the amount of $514.[5]

---

[5] Plaintiffs' moving papers sought a higher amount in costs, but after backup was requested by the Court, Plaintiffs'
counsel provided back-up only for $112 in process server costs.

7.  **Post-Judgement Interest**

Plaintiffs have not provided any argument for post-judgment interest in their default

judgment motion.  Nevertheless, "the very language of 28 U.S.C. § 1961 ensures that an award

of post-judgment interest is mandatory in any civil case where money damages are recovered."

*Duffy v. Oyster Bay Indus., Inc.,* No. 10 Civ. 3205(ADS)(ETB), 2011 WL 2259798, at *3 (E.D.N.Y.

Mar. 29, 2011), *report and recommendation adopted,* No. 10 Civ. 3205(ADS)(ETB), 2011 WL

2259749 (E.D.N.Y. June 2, 2011); *see generally Begum v. Ariba Disc., Inc.,* No. 12 Civ. 6620(DLC),

2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and

NYLL wage-and-hour case).  Thus, in *Tacuri v. Nithun Constr. Co.,* No. 14 Civ. 2908(CBA)(RER),

2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015), the court awarded the plaintiffs post-judgment

interest, despite their failure to request post-judgment interest, on all sums awarded concerning

their FLSA and NYLL wage-and-hours claims.  Therefore, I respectfully recommend that the

Plaintiffs also be awarded post-judgment interest, to be calculated from the date the Clerk of

Court enters judgment in this action until the date of payment, using the federal rate set forth in

28 U.S.C. § 1961. *See id.*

**CONCLUSION**

For the reasons set forth above, I recommend that each Plaintiff be awarded the

amounts comprised of unpaid minimum wages, overtime wages, and liquidated damages as

delineated in the below chart.  I also recommend awarding Plaintiffs attorneys' fees in the

amount of $8,360, and costs in the amount of $514.  Additionally, I recommend the Clerk of the

Court compute pre-and post-judgment interest consistent with this Report and

17

Recommendation.  Plaintiffs are directed to serve a copy of this Report and Recommendation

on Defendant and file proof of service of the same on the docket by no later than May 17, 2024.

|  | Plaintiff Alvarez | Plaintiff Alfaro |
|---|---|---|
| Minimum Wages | $32,320 | $34,720 |
| Overtime Wages | $54,380 | $57,830 |
| Liquidated Damages | $86,700 | $92,550 |
| TOTALS: | $173,400 | $185,100 |

Dated: May 6, 2024
        New York, New York

Respectfully submitted,

*Katharine H. Parker*

KATHARINE H. PARKER
United States Magistrate Judge

## NOTICE

Plaintiff shall have fourteen days, and Defendant shall have fourteen days, from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).  A party may respond to another party's objections after being served with a copy.  Fed. R. Civ. P. 72(b)(2).

Plaintiff shall have fourteen days to serve and file any response.  Defendant shall have fourteen days to serve and file any response.  Any objections and any responses to such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and served on the other parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Abrams.  The failure to file timely objections shall result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).